UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

NATHAN K. LUMBARD,

              Plaintiff,                      Case No. 1:15-cv-1013

v.                                                Honorable Gordon J. Quist

ST. JOSEPH COUNTY SHERIFF
DEPARTMENT et al.,

              Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Defendants MDOC and FBOP because they are immune from suit. The Court will serve the complaint upon the remaining Defendants.

**Factual Allegations**

Plaintiff presently is incarcerated in the Carson City Correctional Facility, but the events giving rise to his complaint also occurred at the St. Joseph County Jail, FCI Ashland and the MDOC Reception and Guidance Center. In his *pro se* complaint, Plaintiff sues the Federal Bureau of Prisons (FBOP), FCI Ashland Medical Director Kenneth Gomez, the Michigan Department of Corrections (MDOC), Corizon Health Care, St. Joseph County Sheriff's Department, Sheriff Brad Bulk, Undersheriff Mark Lillywhite, Captain Tim Schuler, Doctor Glendora Green, Nurse Patty Kane and Physician Assistant (Unknown) Boomershine.

Plaintiff was convicted of federal offenses in 2012 and sent to FCI Ashland to serve his sentence. On March 25, 2013, Plaintiff was seen by health care for the sudden onset of blurred and double vision, accompanied by headaches. Plaintiff alleges that Defendant Gomez referred him to an optometrist, but Plaintiff never received the appointment. Three months later, Plaintiff was transferred on a writ to the St. Joseph County Jail. Upon his arrival, Plaintiff informed Defendant Kane of his deteriorating vision, which had not been addressed, and asked for aspirin to treat his headaches. Kane told Plaintiff that she would inform Dr. Green of Plaintiff's vision problem and refused his request for aspirin because she "[runs] a drug free facility." (Compl. ¶3, ECF No. 1, Page ID#5.) Plaintiff made several requests over the next four months to see a doctor, which were ignored. After intervention by Plaintiff's mother and his attorney, he was seen by an opthamologist on November 5, 2013. By that time, Plaintiff was experiencing tremors and loss of vision in his right eye. The opthamologist reported that Plaintiff's symptoms were not related to his eyes and recommended that he see a doctor.

Plaintiff continued to make requests to see a doctor, which were ignored or denied. In December 2013, Defendant Kane removed Plaintiff from his cell, stating "since you want to play

sick and have your mother call up here, you can go up front, I'm not going to have a worried mother on my hands." (Compl. ¶6, ECF No. 1, Page ID#6.)  According to Plaintiff, he was moved to the drunk tank, which was filthy and overcrowded.  Inmates slept on mats on the floor and Plaintiff often went six days or more without showers.  Plaintiff's attorney spoke with Defendant Kane on the telephone twice in December and asked for Dr. Green to call him.  Dr. Green never saw Plaintiff or called his attorney.  Plaintiff wrote grievances regarding the cell conditions and the failure to provide him with a doctor.  On December 27, 2013, Defendant Kane told Plaintiff that she would make an appointment with a neurologist within 72 hours, but failed to do so.  In response to Plaintiff's grievance regarding the cell conditions, Defendant Schuler stated, "You were placed up front per Undersheriff, [sic] myself until further notice.  It is our decision as to when you will be moved back [to the general population].  This is for officers to keep an eye on you as you have some medical needs and safety."  (Compl. ¶9, ECF No. 1, Page ID#7.)  With regard to a doctor, Schuler responded, "If you need to see a specialist, it doesn't happen overnight.  I will forward a copy of this to medical."  (Compl. ¶9, ECF No. 1, Page ID#7.)

Plaintiff was attacked by another inmate in the drunk tank and moved to isolation.  He alleges that he started a hunger strike in order to be seen by a doctor.  Defendant Schuler came to Plaintiff's cell and agreed to let Plaintiff see a doctor if he ended the hunger strike.  Defendant Kane told Plaintiff that he would have to pay the cost of any tests before they would be performed.  Plaintiff filed a grievance regarding the matter and Plaintiff's attorney again intervened on his behalf.  Plaintiff was sent for an MRI on January 31, 2014.  The conclusions were as follows:

    1)    Numerous punctate and patchy hyperintensities in the cerebral white matter tracts and pons.

>    2)    The differential includes demyelination (consistent with family history) but also includes vasculitis, lime disease, or other white matter pathologies. Please correlate with neurological exam and laboratory findings.

(Compl. ¶11, ECF No. 1, Page ID#8.) The neurologist ordered additional tests, which were never performed.

Plaintiff was returned to FCI Ashland in February of 2014. Despite being unable to walk without assistance, Plaintiff was not provided with any special accommodation for a wheelchair or walker and was assigned to a top bunk. After numerous falls, Plaintiff was provided with a walker that was not suited for the conditions of the facility. As a result, Plaintiff continued to fall and suffer injuries. Plaintiff also was forced to ascend stairs in order to reach the health services department on the second floor. Plaintiff was diagnosed with Multiple Sclerosis (MS) on June 12, 2014. Dr. Melissa Smith recommended that Plaintiff begin disease modifying therapy as soon as possible to help protect from further MS attacks and disability. Plaintiff alleged that FBOP refused to treat Plaintiff with Tysabri as recommended by Dr. Smith. Plaintiff was prescribed medication for the pain related to his MS, but it was ineffective and caused him to suffer extreme dizziness and headaches. When Plaintiff reported this to health care, they labeled him "non-compliant" and refused to provide further treatment.

Plaintiff was transferred to the custody of the MDOC on July 8, 2014. Plaintiff reported his condition upon arrival at the MDOC Reception and Guidance Center and was seen by Defendant Boomershine on July 22, 2014. Boomershine informed Plaintiff that his current medication, which only treated the symptoms of his disease, was sufficient and that he would not be receiving the disease modifying therapy recommended by Dr. Smith. Plaintiff grieved the matter without success. Plaintiff's condition continued to worsen and he made numerous requests for medical treatment over the next several months. After Plaintiff threatened litigation, he was

permitted to see a neurologist on May 5, 2015. Treatment was ordered and Plaintiff began disease modifying therapy for the first time on May 18, 2015.

Plaintiff alleges that as a result of Defendants' deliberate indifference, he is now confined to a wheelchair and suffers from diminished vision, incontinence, numbness in lower and upper extremities caused by spastic paraplegia, cognitive impairment in the form of memory loss, speech difficulty, depression, muscular atrophy, involuntary tremors, etc. Plaintiff contends that timely diagnoses and proper treatment would have mitigated - if not altogether prevented - his current state of disability.

## Discussion

As an initial matter, the United States, as a sovereign, cannot be sued without its prior consent, and the terms of its consent define the court's subject matter jurisdiction. *McGinness v. U.S.*, 90 F.3d 143, 145 (6th Cir. 1996). A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied. *U.S. v. King*, 395 U.S. 1, 4 (1969); *Soriano v. U.S.*, 352 U.S. 270, 276 (1957). A *Bivens* claim may not be brought against the Bureau of Prisons because the United States has not consented to jurisdiction for these causes of action against its agencies. *See FDIC v. Meyer*, 510 U.S. 471, 484 (1994); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that a federal prisoner cannot bring a *Bivens* action against the Bureau of Prisons). Accordingly, this Court lacks subject matter jurisdiction over the claims against the Bureau of Prisons.

Plaintiff also is precluded from maintaining his claim under § 1983 against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst*

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the MDOC also must be dismissed.

At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state one or more claims against the remaining Defendants.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC and FBOP will be dismissed as immune pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against the remaining Defendants.

An Order consistent with this Opinion will be entered.


Dated: January 27, 2016                /s/ Gordon J. Quist
                                       GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE